IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
January 23, 2024 Session

**STATE OF TENNESSEE v. JOHN MICHAEL STOREY**

**Appeal from the Criminal Court for Campbell County**
**Nos. 18734, 19303   Zachary R. Walden, Judge**

_____

**No. E2023-00431-CCA-R3-CD**

_____

The Defendant, John Michael Storey, pled guilty as a Range III, persistent offender to reckless homicide and the sale and delivery of fentanyl. As part of the plea, the parties agreed to have the trial court decide the length of the sentences and the manner of their service. Following a sentencing hearing, the trial court imposed an effective sentence of eight years and denied the Defendant's request for an alternative sentence. On appeal, the Defendant argues that the trial court should have granted an alternative sentence or, alternatively, should have modified his sentence pursuant to Tennessee Rule of Criminal Procedure 35 to provide for probation or split confinement. Upon our review, we conclude that the Defendant's notice of appeal was untimely as to the trial court's original sentencing decision, and we dismiss that part of the appeal. We respectfully affirm the trial court's judgments in all other respects.

**Tenn. R. App. P. 3 Appeal as of Right;**
**Judgments of the Criminal Court Affirmed**

TOM GREENHOLTZ, J., delivered the opinion of the court, in which ROBERT H. MONTGOMERY, JR., and KYLE A. HIXSON, JJ., joined.

T. Scott Jones, Knoxville, Tennessee, for the appellant, John Michael Storey.

Jonathan Skrmetti, Attorney General and Reporter; Brooke A. Huppenthal, Assistant Attorney General; Jared R. Effler, District Attorney General; and Andrea Bridges, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

# FACTUAL BACKGROUND

## A. MR. BLACKWELL'S DEATH

On December 1 and 2, 2020, William Kent Blackwell met the Defendant to buy drugs. A few days later, on December 4, he again met the Defendant for this purpose while taking his girlfriend to work. After the transaction, Mr. Blackwell dropped his girlfriend off at her workplace, a restaurant in LaFollette, and went to the restaurant's bathroom. After some time, his girlfriend got worried and asked someone to check on him. Mr. Blackwell was found dead in the bathroom with a belt around his arm. His autopsy revealed he died from acute fentanyl toxicity.

Tennessee Bureau of Investigation (TBI) Special Agent Todd Coleman searched Mr. Blackwell's cell phone and found text messages with the Defendant about drug sales. In March 2021, Agent Coleman and LaFollette Police Detective Matthew Forsythe questioned the Defendant. The Defendant said he and Mr. Blackwell were best friends. He admitted to meeting Mr. Blackwell on December 1, 2, and 4, but claimed he only sold him marijuana. The Defendant specifically denied selling or giving Mr. Blackwell heroin, fentanyl, pills, or any powder.

Some thirteen months later, law enforcement officers encountered the Defendant again after a car accident and discovered that he had fentanyl pills. Agent Coleman then questioned the Defendant again. After initially denying that he sold Mr. Blackwell anything other than marijuana, the Defendant admitted to giving him a pill containing fentanyl on December 4, 2020. The Defendant acknowledged that his actions caused Mr. Blackwell's death.

## B. THE DEFENDANT'S PLEA AND SENTENCING HEARING

On April 14, 2021, a Campbell County grand jury charged the Defendant with second degree murder, as well as with the sale and delivery of a Schedule II controlled substance, fentanyl. *See* Tenn. Code Ann. §§ 39-13-210 (2018); 39-17-417(a)(2), (a)(3)

(2018). On October 31, 2021, the Defendant pled guilty to the offenses of reckless homicide and the sale and delivery of fentanyl.[1]

In the plea agreement, the parties included a stipulation of facts, the substance of which we recited above. The parties also agreed that the Defendant would be sentenced to concurrent terms of between three and six years for the controlled substance convictions. However, for the reckless homicide conviction, the parties agreed that the trial court could sentence the Defendant, as a Range III, persistent offender, to a concurrent sentence of between eight and ten years. The court would also decide how the Defendant would serve all the sentences.

The trial court convened a sentencing hearing on December 16, 2022. At the hearing, Special Agent Coleman testified that Tennessee had seen a significant increase in fentanyl distribution in recent years. Specifically, he testified that Campbell County was unique due to Interstate 75 running from Detroit through Campbell County and Knoxville for fentanyl distribution. His testimony included statistics from the TBI and the Tennessee Department of Health showing that fentanyl-related overdoses had increased significantly in recent years. Detective Forsythe also testified that he received increasing drug overdose calls in the City of LaFollette since 2017. He said that nearly all those overdoses involved either heroin or fentanyl.

The Defendant addressed the court through an allocution. In its entirety, the Defendant's allocution was as follows:

> I lost my best friend on that day, and I'm sorry. I'm so sorry, guys, for everything. I—I had no ill intentions. He was my best friend in the world. And since his death, my life has been hard. I know it's been hard on my mom and my sister and also my dad before his passing. I'm sorry for that, guys, I am. I—Kent was—he was my best friend in the world. I (inaudible) for our birthdays, go and doing things together because we were so close. I was just sitting the other night talking to him.

---

[1] In a separate case, the Defendant also pled guilty to possession of a controlled substance. However, because the Defendant raises no issues with respect to this misdemeanor conviction, we do not address it further in this opinion. *See* Tenn. R. App. P. 13 (b) ("Review generally will extend only to those issues presented for review.").

3

## C.   THE TRIAL COURT'S SENTENCE

After the hearing, the trial court gave a detailed statement of the reasons for its sentence. During the sentencing hearing, the court carefully weighed the enhancement and mitigating factors presented by both parties. The court applied two enhancement factors: the Defendant's prior criminal behavior, including his possession of fentanyl after the victim's death, and, related to the controlled substance convictions, the Defendant's lack of hesitation in committing a crime with a high risk to human life. *See* Tenn. Code Ann. § 40-35-114(1), (10) (2019). The court placed significant weight on the enhancement factors in determining the sentence.

In considering mitigating factors, the trial court rejected the argument that addiction justified the Defendant's conduct or excused the crimes under the law. *See* Tenn. Code Ann. § 40-35-113(3) (2019). It acknowledged that the Defendant provided limited assistance to law enforcement, though it did not attribute substantial weight to this factor. *See id.* § 40-35-113(9). The court found no evidence that the Defendant helped locate property or persons involved in the crime or that the catch-all mitigating factor applied. *See id.* § 40-35-113(10), (13).

The trial court emphasized the need for the sentence to reflect the seriousness of these offenses. It discussed the dangers of fentanyl, noting its growing prevalence and its uniquely lethal nature. The court also found that confinement was necessary to prevent future offenses and deter others from engaging in similar conduct. *See* Tenn. Code Ann. § 40-35-103(1)(B) (2019).

The trial court considered the Defendant's lack of a significant prior criminal record, except for minor infractions, but concluded that the seriousness of the crimes outweighed these factors. Although the Defendant expressed remorse, the court found that his continued drug use after the victim's death, particularly his possession of fentanyl, suggested a lack of genuine accountability. This, coupled with the deadly nature of fentanyl and the Defendant's failure to cease his involvement with the substance until facing legal consequences, led the court to conclude that probation was inappropriate.

Ultimately, the trial court imposed a sentence of eight years for the reckless homicide conviction and three years each for the controlled substance convictions. It ordered that the sentences be served concurrently in the Tennessee Department of Correction, stressing that the gravity of the offenses and the Defendant's subsequent actions required serious consequences. The court underscored the need for accountability and the importance of deterrence in addressing the broader public health crisis posed by fentanyl abuse.

## D. DEFENDANT'S RULE 35 MOTION

The trial court clerk filed the judgments of conviction on January 13, 2023. Four days later, the Defendant filed a motion to modify his sentences pursuant to Tennessee Rule of Criminal Procedure 35. In his motion, the Defendant requested that the court "reassess" its rationale for a custodial sentence and instead refer him to a rehabilitation center. In particular, the Defendant asserted that he had no criminal history and that the testimony at the sentencing hearing showed that he was a "prime candidate" for probation.

On February 24, 2023, the trial court denied the Defendant's Rule 35 motion in a detailed written order. The court reviewed the original sentencing factors, including the Defendant's continued criminal behavior, the danger of fentanyl, and the devastating impact on the victim's family. It concluded that confinement was necessary to reflect the seriousness of the crime and serve as a deterrent. The court also found that the Defendant's arguments, such as his claim of remorse and his cessation of drug use, were not supported by the evidence apart from his statements. To that end, the trial court reaffirmed its previous sentences and denied the Defendant's motion.

The Defendant filed a notice of appeal twenty-seven days later on March 23, 2023. In this notice, the Defendant sought to appeal the original sentences imposed and the trial court's denial of his Rule 35 motion.

## ANALYSIS

In this appeal, the Defendant first argues that the trial court abused its discretion when it ordered him to serve his eight-year sentence in custody instead of imposing an alternative sentence to incarceration. He also asserts that the trial court abused its discretion when it denied his Rule 35 motion to modify his sentence. We address each of these issues in turn.

### A. UNTIMELY NOTICE OF APPEAL

As an initial matter, we must address the timeliness of the Defendant's appeal of the original sentences. *See* Tenn. R. App. P. 13(b) ("The appellate court shall also consider whether the trial and appellate court have jurisdiction over the subject matter, whether or not presented for review[.]"). In this case, the Defendant's notice of appeal seeks review of two separate sets of orders: the original January 2023 judgments of conviction and the February 2023 order denying his Rule 35 motion. In their respective briefs, both parties address the timeliness of the appeal, and they each represent to this court that the

Defendant's notice of appeal was timely filed in compliance with the Tennessee Rules of Appellate Procedure. At least with respect to the Defendant's appeal of the original sentences, we respectfully disagree.

"It is no secret that under Tennessee Rule of Appellate Procedure 4(a), the notice of appeal must be filed within 30 days after the date of entry of the judgment appealed from." *State v. James*, No. E2021-00559-CCA-R3-CD, 2022 WL 633540, at *1 (Tenn. Crim. App. Mar. 4, 2022) (citation and internal quotation marks omitted), *no perm. app. filed*. Although the judgments in this case were signed on December 16, 2022, they were "entered" when the trial court clerk filed them on January 13, 2023. *See State v. Vaughn*, 279 S.W.3d 584, 593 (Tenn. Crim. App. 2008). As such, the Defendant had until February 13, 2023,[2] to file a notice of appeal from these judgments unless this period was tolled by an appropriate post-judgment motion. *See* Tenn. R. App. P. 4(a), (c). As we discuss below, the Defendant filed no such motion. Consequently, his March 23, 2023, notice of appeal was untimely as to any appeal from the original judgments of conviction.

"An untimely notice of appeal can, and often does, result in a dismissal of the appeal." *State v. Manning*, No. E2022-01715-CCA-R3-CD, 2023 WL 7439203, at *3 (Tenn. Crim. App. Nov. 9, 2023), *perm. app. denied* (Tenn. May 16, 2024); *see State v. Galindo*, No. E2009-00549-CCA-R3-CD, 2010 WL 4684469, at *13 (Tenn. Crim. App. Nov. 19, 2010) ("An attorney who fails to perfect a timely appeal from the entry of a judgment places his client's appeal in peril of dismissal."), *perm. app. denied* (Tenn. Apr. 13, 2011). That said, the Rules of Appellate Procedure provide that the requirement of a timely filed notice of appeal "may be waived in the interest of justice." Tenn. R. App. P. 4(a).

When considering whether to waive an untimely notice of appeal, "this court will consider the nature of the issues presented for review, the reasons for and the length of the delay in seeking relief, and any other relevant factors presented in the particular case." *State v. Rockwell*, 280 S.W.3d 212, 214 (Tenn. Crim. App. 2007). The appealing party "bears the responsibility to properly perfect his [or her] appeal or to demonstrate that the 'interests of justice' merit waiver of an untimely filed notice of appeal." *State v. Thomas*, No. W2022-00109-CCA-R3-CD, 2023 WL 328337, at *3 (Tenn. Crim. App. Jan. 20,

---

[2] We take judicial notice that the thirtieth day after the entry of the judgments fell on February 12, 2023, a Sunday. *See* Tenn. R. Evid. 201. As such, the Defendant could have timely filed his notice of appeal on the following day, Monday, February 13, 2023. *See* Tenn. R. App. P. 21(a); *State v. Bryant*, No. M2022-00260-CCA-R3-CD, 2023 WL 2783171, at *14 (Tenn. Crim. App. Apr. 5, 2023) ("However, because the thirtieth day fell on a Sunday, Defendant had until Monday, February 28, 2022, to file a timely notice of appeal." (citing Tenn. R. App. P. 21(a)), *no perm. app. filed*.

2023), *perm. app. denied* (Tenn. June 7, 2023); Tenn. R. App. P. 4(a). We consider these factors in turn.

### 1. Nature of the Issues Raised

The first *Rockwell* factor looks to the nature of the issues raised in the appeal to determine whether a waiver is in the interest of justice. *Rockwell*, 280 S.W.3d at 214; *State v. Dodson*, 780 S.W.2d 778, 781 (Tenn. Crim. App. 1989) ("Since the appeal of the appellant has merit, it is in the interest of justice that the notice of appeal requirement be waived."); *Gilliam v. State*, No. 03C01-9411-CR00406, 1995 WL 238623, at *4 (Tenn. Crim. App. Apr. 25, 1995) ("If, as here, the issue or issues to be raised do not have merit based upon the record presented by the appellant, this [c]ourt will not waive the requirement. It is not 'in the interest of justice' to consider frivolous issues or issues which are clearly without merit."). In this case, the Defendant challenges the trial court's order that he serve his eight-year sentence in custody.

Importantly, we would review the trial court's original sentencing decision for an abuse of discretion, "granting a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012); *State v. Caudle*, 388 S.W.3d 273, 279 (Tenn. 2012). As the supreme court has made clear, "a trial court's decision to grant or deny probation will not be invalidated unless the trial court wholly departed from the relevant statutory considerations in reaching its determination." *State v. Sihapanya*, 516 S.W.3d 473, 476 (Tenn. 2014). In this case, the trial court imposed within-range sentences, and it expressly considered the purposes and principles of sentencing, possible enhancement and mitigating factors, and the common-law factors applicable to determinations of alternative sentencing. As such, in a review of the sentences, we necessarily would accord a presumption of reasonableness to the trial court's sentencing decision and review that decision for an abuse of discretion.

In his argument, the Defendant does not raise issues of law, but instead argues that the trial court abused its discretion in weighing the various sentencing considerations appropriately.[3] However, when reviewing a trial court's decision for an abuse of discretion,

---

[3] In particular, the Defendant argues that the trial court did not make the necessary findings to order incarceration based on deterrence or the need to avoid depreciating the seriousness of the offenses. We note, however, that this argument does not present a substantial claim for relief because the heightened standard of review does not apply unless the trial court denies alternative sentencing solely based on one of these factors. *See Sihapanya*, 516 S.W.3d at 476; *State v. Powell*, No. E2019-00524-CCA-R3-CD, 2020 WL 4284047, at *8 (Tenn. Crim. App. July 27, 2020) ("In the instant case, the trial court found that alternative sentencing should be denied because of the seriousness of the offense and also because of the

we must have "awareness that the decision being reviewed involved a choice among several acceptable alternatives." *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010). To that end, we may not "second-guess a trial court's exercise of its discretion simply because the trial court chose an alternative that [others] would not have chosen." *State v. McCaleb*, 582 S.W.3d 179, 186 (Tenn. 2019). We also may not substitute our judgment for that of the trial court simply because a party believes that another choice would have been a better decision. *Cf. State v. Willis*, 496 S.W.3d 653, 729 (Tenn. 2016).

Here, the trial court identified the correct standards of law that applied to its consideration of alternative sentencing. It considered and weighed the appropriate statutory and common-law factors and made a reasoned choice between acceptable alternatives after considering the relevant facts on the record. Given his agreed status as a Range III, persistent offender, the law does not consider the Defendant to be a favorable candidate for probation. *See* Tenn. Code Ann. § 40-35-102(6)(A) (2019); *State v. Still*, No. E2021-01009-CCA-R3-CD, 2022 WL 6679903, at *4 (Tenn. Crim. App. Oct. 11, 2022) ("[T]he State correctly points out that in agreeing to be sentenced as a Range II offender, the Defendant agreed to classification as a multiple offender for all purposes, including alternative sentencing."), *no perm. app. filed*. In other words, the trial court's decision to impose incarceration was neither illogical nor unreasonable. As such, even if reasonable minds could disagree with the propriety of the decision, the Defendant has not shown that the trial court acted outside its discretion to deny an alternative sentence to incarceration. *See Caudle*, 388 S.W.3d at 279. We conclude that the nature of the Defendant's issue does not weigh in favor of waiving the requirement of a timely filed notice of appeal.

### 2. Length and Reasons for the Delay

The second *Rockwell* factor considers the length of the delay in filing a notice of appeal and the reasons for the delay. *Rockwell*, 280 S.W.3d at 214. We acknowledge that the Rules of Appellate Procedure allow certain motions to effectively toll the period for filing a notice of appeal. *See* Tenn. R. App. P. 4(c). In the instant case, the Defendant filed a Rule 35 motion four days after the judgments were entered. However, a Rule 35 motion is not one of the motions that tolls the period for filing a timely notice of appeal. *See State v. Bilbrey*, 816 S.W.2d 71, 74 (Tenn. Crim. App. 1991) ("Obviously, the appellate rules do not specifically allow a Tenn. R. Crim. P. 35 motion to suspend the running of the appeal time from the entry of the judgment.").

---

need for deterrence. Therefore, based upon *Sihapanya*, the trial court was not required to make further specific findings."), *no perm. app. filed*.

Instead, "[a]n appeal of a Rule 35 motion is separate and distinct from an appeal seeking review of the original judgment, including the sentence imposed." *State v. Williams*, No. E2021-00339-CCA-R3-CD, 2022 WL 630879, at *2 (Tenn. Crim. App. Mar. 4, 2022), *no perm. app. filed*. To that end, we have previously cautioned that

> [a] defendant who fails to appeal from the entry of a judgment of conviction, including the sentence, but who elects to appeal after a Rule 35 motion to reduce sentence has been decided, runs the risk of having failed to preserve any issue regarding the validity of the judgment, being left with only those properly raised in the Rule 35 motion.

*Bilbrey*, 816 S.W.2d at 75; *see State v. Webb*, No. M2022-01235-CCA-R3-CD, 2024 WL 750598, at *3 n.2 (Tenn. Crim. App. Feb. 23, 2024) ("Because a motion to reduce a sentence does not toll the 30-day limitation on the notice of appeal, we note that an appeal of his original sentence would have been untimely[.]" (citations omitted)), *no perm. app. filed*; *State v. Bishop*, No. E2005-02675-CCA-R3-CD, 2006 WL 3628085, at *1 (Tenn. Crim. App. Dec. 14, 2006) ("Although the notice of appeal referred to the judgments which first imposed consecutive sentences, the filing of a Rule 35 motion does not toll the time for filing a notice of appeal for issues other than those raised in the motion for sentence reduction."), *no perm. app. filed*.

As to the length of the delay, the notice of appeal was filed about thirty-eight days after the deadline set by Tennessee Rule of Appellate Procedure 4(a). We have waived late notices of appeal in cases with longer delays, particularly when the case had an excusable reason for the delay, involved a pro se litigant, or presented significant and substantial issues of law. *E.g.*, *State v. Williams*, No. M2007-01385-CCA-R3-CD, 2009 WL 564231, at *10 (Tenn. Crim. App. Mar. 5, 2009) (waiving notice of appeal filed 406 days following a late-filed motion for a new trial due to "the gravity of the crime [first degree murder] as well as the magnitude of the punishment [life sentence plus six years]"), *perm. app. denied* (Tenn. Aug. 17, 2009). But we have dismissed appeals with significantly less delay than that here, particularly when the defendant had no excusable reason for the delay, did not acknowledge the issue, or failed to request a waiver. *E.g.*, *James*, 2022 WL 633540, at *1 (declining to find the interest of justice mandated waiver where the defendant's notice of appeal was seventeen days late without requesting a waiver or providing an explanation for the untimely filing), *no perm. app. filed*; *State v. Murray*, No. M2020-00168-CCA-R3-CD, 2021 WL 2156932, at *3 (Tenn. Crim. App. May 27, 2021) (not excusing delay of 20 days after analyzing appellant's issue on the merits and concluding that "the interest of justice does not necessitate waiver of the timely filing of the notice appeal"), *no perm. app. filed*.

We acknowledge that these factors are not alone dispositive of whether a late-filed notice should be excused, and they must be carefully balanced with the other equities in the case. Thus, while some of our cases have granted a waiver in this situation, others have not. *Compare State v. Martin*, No. E2014-00738-CCA-R3-CD, 2015 WL 395664, at *5 (Tenn. Crim. App. Jan. 30, 2015), *perm. app. denied* (Tenn. Apr. 10, 2015) with *Williams*, 2022 WL 630879, at *2; *State v. Stratton*, No. 01C01-9611-CC-00472, 1997 WL 749428, at *1 (Tenn. Crim. App. Dec. 4, 1997). Nevertheless, in this case, we conclude that the significant delay and the absence of an excusable reason for it weigh against waiving the requirement of a timely filed notice of appeal.

### 3. Acknowledgment of Late Filing and Requested Waiver

Our decision in *Rockwell* also looks to "other relevant factors." *Rockwell*, 280 S.W.3d at 214. Among these factors are whether the defendant acknowledges the late filing and either affirmatively requests a waiver of the timely filing requirement or responds to the State's brief raising the untimely filing as an issue. *Id.* After all, the parties generally "know what is best for them, and are responsible for advancing the facts and argument entitling them to relief." *State v. Bristol*, 654 S.W.3d 917, 923-24 (Tenn. 2022) (internal quotation marks and citation omitted). Thus, where a party does not request that we waive a late-filed notice of appeal, "we will be reluctant to intervene otherwise." *Manning*, 2023 WL 7439203, at *5.

These additional *Rockwell* factors are not present here, likely due to the Rule 35 motion itself. Again, these factors are not dispositive, but their absence weighs against waiving the requirement of a timely filed notice of appeal.

### 4. Conclusion

As this court observed in *Rockwell*, "Waiver is not automatic and should only occur when 'the interest of justice' mandates waiver. If this court were to summarily grant a waiver whenever confronted with untimely notices, the thirty-day requirement of Tennessee Rule of Appellate Procedure 4(a) would be rendered a legal fiction." *Rockwell*, 280 S.W.3d at 214. Important factors to our decision in this case are the nature of the issue raised, the significantly late filing and the lack of clear reasons for it, and the absence of any acknowledgment of the late filing or a request for a waiver. On balance, we respectfully hold that the interest of justice does not weigh in favor of waiving the

requirement of a timely filed notice of appeal, and we dismiss that part of this appeal seeking review of the original judgments of conviction.

That said, the Defendant's March 23, 2023 notice of appeal *is* timely as to his appeal of the trial court's denial of his Rule 35 motion. As such, we address that issue next.

### B.    MODIFICATION OF THE DEFENDANT'S SENTENCES

The Defendant argues that the trial court abused its discretion by denying his motion to modify the manner in which he was ordered to serve his sentences. More specifically, he asserts that the trial court continued in its "illogical conclusions" from the sentencing hearing and that it improperly expected him to present proof that is not required under Tennessee Rule of Criminal Procedure 35. For its part, the State contends the denial was proper and that the trial court properly found that the record did not justify altering the sentences in the interests of justice. We agree with the State.

### 1.    Standard of Appellate Review

"The standard of review in an appeal from a trial court's decision on a Rule 35 motion is whether the trial court abused its discretion." *State v. Patterson*, 564 S.W.3d 423, 429 (Tenn. 2018); *State v. Deberry*, 651 S.W.3d 918, 924 (Tenn. 2022). "A trial court abuses its discretion when it applies an incorrect legal standard, reaches a conclusion that is not logical, bases its decision on a clearly erroneous assessment of the evidence, or uses reasoning that causes an injustice to the complaining party." *State v. Tolle*, 591 S.W.3d 539, 545 (Tenn. 2019) (citation and internal quotation marks omitted).

### 2.    Tennessee Rule of Criminal Procedure 35

Tennessee Rule of Criminal Procedure 35 states that "the trial court may reduce a sentence upon motion filed within 120 days after the date the sentence is imposed or probation is revoked." Tenn. R. Crim. P. 35(a). "The intent of [Rule 35] is to allow modification only in circumstances where an alteration of the sentence may be proper in the interests of justice." Tenn. R. Crim. P. 35, advisory comm'n cmts. Importantly, the "rule does not vest the defendant with a remedy as of right. Rather, this rule commits the granting of relief to the sound discretion of the trial court." *State v. Edenfield*, 299 S.W.3d 344, 346 (Tenn. Crim. App. 2009).

Pursuant to Rule 35, the trial court retains jurisdiction to modify both the length of a sentence and the manner of its service under certain circumstances. That said, Rule 35

11

imposes different standards depending on how the judgment was originally entered. For example, if the defendant pleads guilty with an agreement as to a specific sentence, a modification of a sentence pursuant to Rule 35 is possible "only in exceptional circumstances." *Patterson*, 564 S.W.3d at 432. These circumstances exist where "unforeseen, post-sentencing developments would permit modification of a sentence in the interest of justice." *Id.* (citation omitted).

However, a different standard applies where, as here, the defendant pleads or is found guilty without an agreement as to sentencing. In that circumstance, Rule 35 "does not require the defendant to make any particular showing in support of the motion and affords the trial court broad discretion to determine whether reduction of the initial sentence is appropriate in the interest of justice." *Id.* at 433-34. Under these circumstances, the court is not limited to consideration of post-sentencing facts, and "Rule 35 functions simply as a second opportunity for a defendant to make a plea for leniency." *Id.* at 434. Thus, Rule 35 "provides the trial court an opportunity to again consider, 'after reflection or upon receipt of new probationary reports or other information,' whether the initial sentence is too severe for any reason." *Id.* Of course, even if the motion is granted, the "court may reduce a sentence only to one the court could have originally imposed." Tenn. R. Crim. P. 35(b).

In this case, the trial court denied the Defendant's Rule 35 motion, reasoning that the parties did not offer any meaningfully different arguments or evidence in the motion than what was presented at the sentencing hearing. In an extensive and thorough written order, the court stated that it considered the testimony offered at the sentencing hearing, the presentence investigation report, the principles of sentencing and arguments as to sentencing alternatives, evidence offered by both parties on the enhancement and mitigation factors, and statistical information provided by the Administrative Office of the Courts as to Tennessee sentencing practices for similar offenses. Ultimately, the trial court reaffirmed its original sentences and denied the Defendant's motion.

On appeal, the Defendant presses three arguments, which we address in turn. First, he asserts that it was illogical for the trial court to deny the motion after recognizing that several factors favored some form of alternative sentencing, such as split confinement. We respectfully disagree.

A trial court will weigh multiple factors as it considers the length of a sentence and the manner of its service. In many cases, at least some sentencing considerations will favor a particular defendant. For example, the trial court recognized several factors that favored the Defendant's rehabilitation, including his education, family support, employment history, and lack of criminal convictions.

However, sentencing courts do not make decisions by tallying factors like debits and credits on a general ledger. To say that various factors *favor* a defendant is not to say how much *weight* should be attributed to them in the context of the case as a whole. Indeed, our supreme court has recognized the possibility that the weight of a *single* sentencing consideration can justify incarceration even when several other factors may favor an alternative sentence. *See State v. Trotter*, 201 S.W.3d 651, 655 (Tenn. 2006); *State v. Hooper*, 29 S.W.3d 1, 13 (Tenn. 2000).

To that end, the trial court here recognized that sentencing factors other than rehabilitation were also at play, including those relevant to retributive and deterrence principles. The court weighed additional facts like the Defendant's involvement in drug trafficking between Knox and Campbell Counties; his attempts to mislead the police investigation; his continued substance use following the victim's death; and the impact of his crimes upon the victim's family. In considering the case as a whole, the trial court was not required to attribute dispositive weight to the factors that favored the Defendant, particularly in light of the other relevant sentencing considerations. Given the trial court's broad discretion under Rule 35, its judgment as to the weight assigned to retributive, deterrence, and rehabilitative factors is entitled to deference, and we conclude that its decision to reaffirm the Defendant's original sentences was neither illogical nor unreasonable. This argument is without merit.

Second, the Defendant argues that the trial court improperly required him to offer proof to obtain a sentence modification. We again respectfully disagree. It is true that the Defendant could seek Rule 35 relief without producing additional evidence or showing the presence of unforeseen, post-sentencing developments. *Patterson*, 564 S.W.3d at 433-34. Because he pled guilty without an agreement for a specific sentence, the Defendant could invoke the trial court's jurisdiction under Rule 35 simply by requesting a modification.

However, a trial court is not obliged to grant Rule 35 relief just because a defendant asks for it. *See Edenfield*, 299 S.W.3d at 346. Instead, that relief may be granted only when the circumstances show that a modification is in the interests of justice. *See* Tenn. R. Crim. P. 35, advisory comm'n cmts. To that end, our supreme court has made clear that a defendant *should* offer additional evidence, where it is available, to help convince the trial court that a reduced sentence is appropriate. *See Patterson*, 564 S.W.3d at 434 ("A defendant in possession of post-sentencing information or developments warranting a reduction of the initial sentence may, and certainly should, use it to support the Rule 35 motion. But a defendant is *required* to provide such information only if the defendant's Rule 35 motion seeks reduction of a specific sentence imposed in exchange for a guilty plea." (emphasis in original)). A trial court does not abuse its discretion by thoughtfully reexamining its original decision and declining to modify a sentence when the record does not support doing so in the interests of justice.

That is exactly what happened in this case. After receiving the Defendant's motion, the trial court examined the record and its original sentencing decisions. After this review, it had doubts, in part, about the extent of the Defendant's remorse and his substance use addiction. Because of these doubts, the court looked for additional evidence in the Defendant's submission to corroborate his representations, and after finding none, the court noted its continuing concerns. Far from being illogical or unreasonable, this review is precisely what one would expect from a court conscientiously exercising its discretion. This argument is also without merit.

Finally, the Defendant carefully identifies the similarities between his case and *Patterson* and argues that he should receive a reduced sentence just as the defendant in *Patterson* did. Again, we respectfully disagree. A trial court's sentencing decisions are necessarily based on individual considerations. *See State v. Dowdy*, 894 S.W.2d 301, 305 (Tenn. Crim. App. 1994). The same is true when a trial court reexamines those decisions through the lens of Rule 35. Although the trial court in *Patterson* granted relief on the record before it, that decision in no way binds other trial courts, including this one, to follow a similar course when they face different defendants, crimes, and circumstances. This argument is without merit.

As with its original sentencing decision, the trial court identified the correct standards of law that applied to the Defendant's Rule 35 motion. It considered and weighed appropriate factors, and it made a reasoned choice between acceptable alternatives after considering the relevant facts contained in the record. As such, we conclude that the trial court acted within its discretion in denying the Defendant's motion to modify his sentence. The Defendant is not entitled to relief.

## CONCLUSION

In summary, we hold that the Defendant's notice of appeal was untimely as to the trial court's original sentencing decision, and we dismiss that part of his appeal. We also hold that the trial court acted within its discretion to deny the Defendant's motion to modify his sentences pursuant to Tennessee Rule of Criminal Procedure 35. We respectfully affirm the judgments of the trial court.

_____
TOM GREENHOLTZ, JUDGE

14